**Harold T. WILSON, Plaintiff–Appellant,**

**v.**

**FAIRCHILD REPUBLIC CO., INC., Defendant–Appellee.**

**No. 461, Docket 97–7247.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1997.

Decided May 11, 1998.

Nathaniel B. Smith, Ranni & Smith, New York City, for Plaintiff–Appellant.

Mark N. Reinharz, Rains & Pogrebin, P.C., Mineola, NY (Terence M. O'Neil, of counsel), for Defendant–Appellee.

Before NEWMAN, ALTIMARI, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

This case presents the question of whether two claims made by the plaintiff are timely. According to the defendant, these claims were first made in a brief filed some two and one-half years after plaintiff's last amendment to his complaint. Under the applicable statute of limitations, these claims would be timely only if they could be set forth in an amended pleading that would relate back to the original complaint. We agree with United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*) that one of these was untimely, because it was new and did not relate back. We conclude, however, that the other was first raised in plaintiff's original complaint, that it was preserved through all subsequent amendments to that complaint, and that it was never waived. It should not, therefore, have been dismissed. Accordingly, we affirm the district court's dismissal of the first claim, and we reverse its dismissal of the second.

## I. Background

Although, in the end, the legal questions in this appeal may be disposed of easily, the long and tortured procedural history of the case requires detailed exposition.

On March 21, 1984, after having received a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC") pursuant to 42 U.S.C. § 2000e–5(f)(1) following his submission of two EEOC charges, plaintiff Harold Wilson filed a timely *pro se* complaint (the "original complaint") against defendant Fairchild Republic Co. Wilson alleged employment discrimination on the ba-

sis of race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, he complained that on multiple occasions between June 1976 and January 1984, he was demoted, received less responsibility than other employees, was given smaller pay increases, was denied promotions, and suffered harassment because he is black. One of Wilson's allegations concerned events that occurred in late 1983 and early 1984 (the "1983/84 claim"). Wilson stated that, at that time, he submitted an application for promotion to the position of general foreman or manager of Fairchild's building service division. He did not get the job; instead, Gerard Walters, a white man, was made acting general foreman in November 1983, and, in January 1984, when Walters declined a permanent assignment to the job, Kenny Parker, also white, was appointed to the position.

Wilson filed a first amended complaint, also *pro se,* on May 22, 1985. In that complaint, he alleged a number of discriminatory actions taken by Fairchild. Among these was the following restatement of the 1983/84 claim:

> That in or about November, 1983 plaintiff again applied for a promotion to a position for which he was duly qualified and again defendant FAIRCHILD declined to promote plaintiff. Defendant did appoint a caucasian employee to the position that plaintiff applied for.

First Am. Compl. ¶ 13. The only failure-to-promote claim that Wilson made in the first amended complaint arose from this incident.

In February 1987, Wilson, who by then was represented by counsel, moved to amend his complaint a second time in order to add claims under 42 U.S.C. § 1981.[1] Wilson's § 1981 claims included the following allegations:

> 20. Plaintiff was denied the promotion and raises based upon his race, as part of a continued pattern of discrimination by the

defendant to deny him "full and equal benefits of all laws and proceedings for the security of persons and property as enjoyed by white persons" in violation of 42 U.S.C. § 1981.

> 21. Defendant, intentionally, maliciously, wilfully and wantonly pursued a promotion policy which systematically denied promotions and raises to blacks based upon their race, and as a result of such policy, plaintiff was denied promotions and raises for which he was qualified, based upon his race.

Second Am. Compl. ¶¶ 20–21. This second amended complaint also added a jury trial demand.

In opposition to Wilson's motion to amend, Fairchild argued that the § 1981 claims were time-barred. Fairchild asserted, among other things, that, while the Title VII suit was premised on discrete discriminatory acts, the § 1981 cause of action alleged systematic discrimination, and therefore that the first amended complaint had not provided Fairchild with adequate notice of any claims arising out of an alleged pattern of discrimination. On April 30, 1987, the district court, in accordance with our decision in *Rosenberg v. Martin,* 478 F.2d 520, 526–27 (2d Cir.1973), rejected Fairchild's position and held that the second amendment related back to the date that the first amended complaint was filed because it "arose out of the 'conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.' " Apr. 30, 1987 Mem. & Order at 2 (quoting 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1501, at 526–27 (1971)). The court explained that "the existing Complaint is based on the same underlying conduct as the proposed Section 1981 cause of action, and the Title VII claim encompasses continuing discriminatory treatment." *Id.* at 3. Accordingly, the court

---

1. In this second amended complaint, Wilson also restated and elaborated upon his original Title VII claims. He alleged that Fairchild had retaliated against him ever since 1977, when he had obtained a favorable administrative ruling on a prior discrimination charge that he had filed with the EEOC and the New York State Division of Human Rights. He also asserted specific instances in which Fairchild had demoted him, failed to give him raises equal to those of other employees, and reduced his pay grade. And, he repeated verbatim the statement from the first amended complaint regarding the 1983/84 claim. *See* First Am. Compl. ¶ 13.

granted Wilson's motion to amend.[2] *See id.* at 5.

On January 28, 1988, in his Supplemental Responses to Defendant's Third Set of Interrogatories, Wilson set forth a number of new claims of discrimination allegedly committed by Fairchild. Specifically, he listed twenty-three positions at Fairchild for which he had applied between 1981 and 1985, most of which had not been mentioned earlier in the litigation. Wilson claimed that, though he was qualified for all of these positions, he was denied appointment to them solely on account of his race. [A 103–05] Fairchild moved to dismiss these additional allegations as beyond the scope of the second amended complaint.

In a March 3, 1988 order, the district court reserved decision on Fairchild's motion. At the same time, it severed the Title VII and § 1981 claims. (The claims were severed after the district court concluded that Fairchild had conceded Wilson's jury trial demand with respect to the § 1981 cause of action. By contrast, a bench trial was to be held on the Title VII claims.) The court then directed the parties to proceed forthwith to the bench trial on the Title VII claims, and stated that it would "determine at a future date the scope of the Section 1981 cause of action as it pertains to" the twenty-three listed positions. Wilson preferred, however, to have all of his claims tried before a jury. Accordingly, he elected to withdraw the Title VII claims and to proceed solely on the § 1981 action. Wilson's decision was understandable because, at the time he made it, there was no bar to the § 1981 suit covering both Fairchild's alleged discrimination against black employees generally (which was alleged in Paragraph 21 of the second amended complaint) and Wilson's claims of individual discrimination against him (which

had been the basis of the withdrawn Title VII action).

Shortly thereafter, however, and before the district court had resolved whether the twenty-three new failure-to-promote claims were within the scope of the § 1981 cause of action, the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), threw a wrench into the works. The High Court held in *Patterson* that § 1981 "covers only conduct at the initial formation of the [employment] contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 179–80, 109 S.Ct. at 2374. Challenges to the conditions of one's employment, the Court explained, were therefore only actionable under Title VII. *See id.* Accordingly, Wilson's claims regarding demotions, denials of raises, and the like, which had been part of the original Title VII action, did not survive the district court's grant of voluntary dismissal of that action. The Supreme Court in *Patterson* noted, however, that a claim of discrimination for failure to promote is actionable under § 1981 "where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* at 185, 109 S.Ct. at 2377. Hence, at least some of Wilson's individual claims against Fairchild were possibly spared.[3] Fairchild, nonetheless, filed a renewed motion for summary judgment, in which it sought dismissal of all of Wilson's § 1981 claims on *Patterson* grounds.

In a brief that he submitted in response to this motion (Wilson's "*Patterson* Brief"), Wilson argued that he

ha[d] alleged numerous instances of discriminatory conduct by the defendants. Among these claims are several specific instances where promotions were denied, as well as specific instances of demotion in

---

**2.** In doing so, the court also ruled that no further amendments would be permitted.

**3.** Congress subsequently passed the Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071 (1991), to overturn *Patterson's* limitations on § 1981 and broaden the statute to cover challenges to the conditions of employment. *See* Pub.L. No. 102–166, § 101; *see also Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 306–309;

114 S.Ct. 1510, 1516–18, 128 L.Ed.2d 274 (1994) (recognizing that Congress enacted § 101 in response to *Patterson*). But the Supreme Court held that this amendment did not apply retroactively to preenactment conduct. *See Rivers,* 511 U.S. at 313, 114 S.Ct. at 1519–20; *see also Landgraf v. USI Film Prods.,* 511 U.S. 244, 280–86, 114 S.Ct. 1483, 1505–08, 128 L.Ed.2d 229 (1994) (holding that § 102 is not retroactive).

employment status. These claims are clearly within the [post-*Patterson*, pre-Civil Rights Act of 1991] scope of [§ ] 1981 actions.

In 1981, a new position, Environmental Engineer was created at FAIRCHILD. Upon information and belief, this position held a grade of 21, and constituted a separate division of FAIRCHILD.... Plaintiff was qualified for this position and applied for the job, but a white man, Thomas Webb, received the promotion. The position held new and different duties and obligations, as well as salary and benefit increases. This new position clearly falls within the conduct still protected by [§ ] 1981, despite the *Patterson* ruling, as the promotion would have resulted in a clear change in contract status. This claim was raised in both the Title VII and [§ ] 1981 causes of action.

In 1982, the position of Manager, Building and Grounds, a position immediately under the Facilities Director was made available. The position was divided into two distinct jobs, Manager of Buildings and Grounds and General Supervisor of Buildings and Grounds, both positions immediately under the Facilities Director. The General Supervisor, the position then held by plaintiff, reported to the Manager of Buildings and Grounds and General Supervisor of Buildings and Grounds. At the time this position was made available, plaintiff was employed at Fairchild as a General Supervisor, although he was clearly qualified to hold higher level positions. Plaintiff applied for the position of Manager of Buildings and Grounds, which would have moved him a considerable upward distance in the corporate hierarchy, and within the realm of the change in contract status.

Pl.'s Sept. 7, 1989 Mem. of Law, at 6–7. In his supporting affidavit, Wilson elaborated on the factual bases for these assertions. Specifically, he described in detail the position of Environmental Engineer, stated his qualifications for it, explained that a white employee was promoted in his stead, and claimed that "I believe the only reason this promotion was denied me and awarded to [the white employee], despite my superior qualifications and work experience, was the result of Defendants [sic] refusal to promote blacks." Wilson Aff. at 2. Wilson then described the positions of General Foreman and General Supervisor of Building and Grounds, and said:

8. I applied for promotion to General Supervisor of Building and Grounds. I was again clearly qualified for this promotion, yet it was given to a white man, Gerard Walter in November 1983.

9. Walter left the position of General Supervisor of Building and Grounds, and I again applied for, and was denied the promotion, despite being qualified for the job. William Stange, a white man, who was less capable of performing the duties of the position was promoted instead of me in January of 1984.

*Id.* at 3.

On January 9, 1995, the district court held that *Patterson* barred most of Wilson's claims. It also concluded that, of those claims that arguably survived *Patterson*, Wilson had waived all but two. These two, according to the court, were those that Wilson had specifically listed in his *Patterson* Brief—"the 1981 refusal to promote to Environmental Engineer and the 1982 refusal to promote to Manager of Building and Grounds." Jan. 9, 1995 Am. Mem. & Order, at 5 & n. 2 ("The Court interprets Wilson's Memorandum of Law dated September 7, 1989, as conceding that all other promotions or demotions alleged at various points of this litigation do not survive the *Patterson* decision."). At the same time, the court denied a motion by Wilson to reinstate his Title VII suit with respect to the claims barred by *Patterson*.[4] The court then stated that it did not yet have sufficient information to determine whether or not the events alluded to in the two unwaived allegations of discrimination sufficed to state claims under *Patterson*. It therefore postponed ruling on whether to dismiss them, and assigned a magistrate judge to hold an evidentiary hearing to de-

---

4. Wilson has not sought review of this ruling, or of the district court's determination that the twenty-three additional claims—most of which were first made in 1988—were waived.

termine "to what extent, if at all, those positions would involve 'an opportunity for a new and distinct relation between the employee and the employer.'" *Id.* at 6–7 (quoting *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377).

The seemingly final nail in the coffin of Wilson's case came on January 27, 1997, when the district court dismissed these two remaining claims. It did not do so, however, because of the *Patterson* decision but because it concluded, in response to a motion by Fairchild for reconsideration of its earlier motion to dismiss, that these claims were newly raised in the *Patterson* Brief and did not relate back either to the original or to the first amended complaint. Hence, they were barred by the statute of limitations. The court found that the failure-to-promote claims that Wilson had made in the original and first amended complaints were "not stated generally, but very specifically." Jan. 27, 1997 Mem. & Order, at 7. Therefore, the court wrote that, "[d]espite [an] inclination, indeed obligation, to construe *pro se* complaints liberally, [it could not ] interpret these initial complaints as in any way encompassing the 1981 and 1982 failure to promote claims ... [without] effectively rewrit[ing] the pleadings, an undertaking well beyond the Court's authority." *Id.* at 7–8.

## II. Discussion

■ On appeal, Wilson challenges the district court's dismissal of these two claims. He argues that the district court erred when it held that these claims were untimely, and asserts that they were either first made in the original complaint or could be said to relate back to it or to the first amended complaint. Technically, it is not the claim in the brief that would relate back, but an amended complaint setting forth that claim. Whether a new claim "arguably arises out of the same 'transaction or occurrence'" as the one that the plaintiff originally alleged, and thus an amended pleading setting forth that claim can be said to relate back to the original complaint, lies in the district court's discretion. *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989). And it is for

abuse of that discretion that we review the district court's decision. *See id. See generally Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir.1996).

Because the two alleged denials of promotion listed in Wilson's *Patterson* Brief were first mentioned at very different times, we consider them separately. As to each, we must first determine whether the claim was "new" when the *Patterson* Brief was filed. If we find that it was, we must next consider whether it was already comprehended within Wilson's original or amended complaints, or, if not, whether it could be set forth in a further amended pleading that would relate back, under Federal Rule of Civil Procedure 15(c), to the original or first amended complaint.

### A. The Environmental Engineer Position

■ Wilson did not allege either in his EEOC charges or in any of his three complaints that he was denied a promotion to the position of Environmental Engineer in 1981. Instead, he first mentioned the claim in his September 1989 *Patterson* Brief and in the affidavit accompanying that brief, which would appear to make it untimely under the applicable statute of limitations.[5] A claim that would otherwise be untimely may, however, "relate back" to an earlier complaint, and not be barred by the statute of limitations. In order for a claim to relate back, it must arise out of the same "conduct, transaction, or occurrence" as the claims raised in the earlier filing. *See* Fed.R.Civ.P. 15(c) (an amendment relates back to an earlier complaint when the new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"); *Goss v. Revlon, Inc.,* 548 F.2d 405, 407 (2d Cir.1976) (same). The pertinent inquiry, in this respect, is whether the original complaint gave the defendant fair notice of the newly alleged claims. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984). Because Wilson's original and first amended complaints asserted only a Ti-

---

**5.** Section 1981 employment discrimination claims brought in New York are subject to that state's three-year statute of limitations. *See Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.1990).

tle VII cause of action, we must consider whether the Title VII violations charged in the first amended complaint put Fairchild on fair notice of the claim that Wilson was denied a promotion to Environmental Engineer in 1981.

■■■ In this circuit, the clear rule is that "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993). Wilson's EEOC charges were filed in January and May of 1983—both well after the events occurred that gave rise to Wilson's allegation with respect to the Environmental Engineer position. But his claim that he was not appointed to Environmental Engineer is found nowhere in his EEOC filings. It follows that, although Wilson was required to exhaust his administrative remedies with respect to the claim, he did not do so. It also follows that he would not have had a Title VII cause of action for the denial of the promotion, and that the claim could not properly have been included in the original pleadings. Accordingly, the existence of the Title VII action could not have put Fairchild on notice of the claim.[6]

We conclude that the record supports the district court's ruling that the Environmental Engineer claim was barred by the three-year statute of limitations and did not relate back to Wilson's original or first amended complaint under Federal Rule of Civil Procedure 15(c).[7]

**B.** *The Manager of Building and Grounds Position*

■■■ The district court's dismissal of the Manager of Building and Grounds claim raises altogether different issues. In his original complaint, Wilson stated the 1983/84 claim, and alleged that he was denied a promotion when, between November 1983 and January 1984, other Fairchild employees were appointed to the position Wilson sought, one on an interim basis and another to the permanent position. The first and second amended complaints reworded these allegations to focus more directly on the November 1983 date, but they clearly referred to the same conduct by Fairchild. The allegation was, moreover, repeated in Wilson's affidavit filed in support of his *Patterson* Brief. The *Patterson* Brief itself, however, listed a *1982* denial of a promotion to Manager of Building and Grounds. And it was this allegation that the district court held to be time-barred because it was a new claim that did not relate back to the original or first amended complaints. (The court never mentioned the 1983/84 claim.)

Under the circumstances, including the reiteration of the 1983/84 claim in every amendment to the original pleading that Wilson filed, we believe that the 1982 date in the *Patterson* Brief was most likely nothing more than a typographical error. The supporting affidavit to the *Patterson* Brief, moreover, provided detailed descriptions of both the organizational hierarchy in the Building and Grounds department and the events surrounding Fairchild's failure to promote Wil-

---

**6.** We note, however, that this case does not present the question—which we do not decide—of whether an unexhausted claim that was specifically raised in an initial complaint alleging only Title VII violations would put an employer on notice of that claim for purposes of a subsequently added § 1981 cause of action (for which no administrative exhaustion requirement applies). We hold only that, where the claim (a) was not expressly stated in the original pleading, and (b) would have been improper on administrative exhaustion grounds had it been included, it is not an abuse of discretion for the district court to conclude that the employer lacked fair notice of it.

**7.** It might seem possible to argue that the claim could, nonetheless, be timely if the assertion of the claim in the *Patterson* Brief (and its accompanying affidavit) could be set forth in an amended pleading that would relate back, derivatively, to the filing of the original complaints by first relating back to the filing of the § 1981 cause of action in the *second* amended complaint, and then being incorporated by that amendment into the earlier pleadings. But the only failure to promote alleged in the second amended complaint was the 1983/84 claim, regarding the Manager of Building and Grounds position, and not the 1981 allegation, involving the Environmental Engineer position. As a result, no derivative relation back is available for this latter claim.

740

son to manager of that division. These conformed to, and elaborated upon, Wilson's statements in the *Patterson* Brief about the "1982" failure to promote. The only material difference between the brief and the affidavit was the date on which the event was said to have happened. There is, furthermore, nothing in the record to indicate that Wilson ever suggested that two adverse employment actions—one in 1982 and the other in 1983/84—occurred with respect to this same position. Thus, the district court's failure to recognize that the "1982" Manager of Building and Grounds allegation was the same as the original 1983/84 failure-to-promote claim was erroneous. And the court's dismissal of that claim as time-barred was also incorrect.

We note that Wilson's attorney never took any steps to dispel the court's confusion with respect to the apparently typographical error. And this failing is particularly troubling because it should have been clear to counsel, at least by January 1995, that the district court was unsure about when the claim accrued and whether it was the one mentioned in the original pleadings. (In 1995, the court specifically referred to "the 1982 refusal to promote to Manager of Building and Grounds." Jan. 9, 1995 Am. Mem. & Order, at 5.) Yet counsel, in the more than two years that elapsed from that time until the January 1997 dismissal on statute of limitations grounds, never made any attempt to set the record straight.

Under the circumstances, the district court's confusion is entirely understandable. Nevertheless, because (a) Wilson consistently alleged the 1983/84 failure to promote claim in all three of his complaints; and (b) his affidavit in support of his *Patterson* Brief stated the correct 1983/84 date when it discussed the Building and Grounds position, we think that the district court's dismissal of the claim was erroneous (because based on a misapprehension of which promotion Wilson was referring to in his *Patterson* Brief and affidavit). We therefore hold that Wilson's § 1981 claim as to the 1983/84 Building and Grounds position was not newly made in the *Patterson* Brief but was instead timely and remains properly before the court.

**Conclusion**

Accordingly, the judgment of the district court is affirmed with respect to the Environmental Engineer job, but reversed and remanded as to the Building and Grounds position.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.