Larry J. TURNER, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, a/k/a AMTRAK,
Defendant.

No. 99–CV–0652 LEK/RWS.

United States District Court,
N.D. New York.

Jan. 23, 2002.

Michael J. Andrews, Office of Michael J. Andrews, P.C., New York City, for Plaintiff.

Larry J. Turner, pro se.

Lori B. Wolmetz, William G. Ballaine, Landman, Corsi Law Firm, New York City, for defendant.

## MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Plaintiff alleges employment discrimination, asserting hostile work environment, racial discrimination, and retaliation claims pursuant to 42 U.S.C. § 1981 and the Human Rights Law set forth in New York Executive Law § 290, et seq. Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons set forth herein, Defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff's employment with defendant Amtrak began in October, 1996, when he was hired as a Lead Service Attendant. On April 30, 1987, he was promoted to Assistant Conductor. In 1988, he was promoted to the position of Locomotive Engineer for the Train and Engine Service ("T & E Service"), and began working out of the Albany / Rensselaer crew base, in what is designated as "Zone 3" of Amtrak's Empire Service Line. The T & E Service is comprised of locomotive engineers, conductors, and assistant conductors. With the exception of Plaintiff, all of the engineers at Zone 3 were white. Plaintiff remained employed by Defendant until his suspension on August 16, 1995, and subsequent termination effective January 26, 1996.

Amtrak provides free and reduced travel rates for its employees, their spouses, and their dependent children. Plaintiff was issued a rail travel privilege pass ("rail pass"), which allowed Plaintiff and his authorized dependents to ride for free on certain Amtrak passenger trains. Upon receipt of the rail pass, Plaintiff received written instructions setting forth the "Conditions of Use" of his rail pass. (Def. Ex.

4, Turner dep. at 183–188). According to the Conditions of Use "[it is] an Act of Larceny to Abuse your pass privilege or for anyone to willfully permit its misuse."

On August 16, 1995, due to an approaching hurricane, Amtrak's long distance service south from New York was canceled. This required Amtrak to re-route passengers traveling southward. In order to assist passengers, Amtrak's Manager of Customer Service at the Albany / Rensselaer Station, William Hollister, reviewed the passenger manifests for trains that left Albany earlier that day. While reviewing the manifests, Hollister noticed Plaintiff's name listed as a passenger on a train en route from Albany, New York to New York City, and then on to South Carolina. Knowing that Plaintiff was scheduled to work that day, Hollister wondered who was traveling under Plaintiff's rail pass. Hollister called New York and requested that the group of passengers traveling under Plaintiff's rail pass be escorted to Amtrak's customer service office in New York's Penn Station upon their arrival.

Amtrak investigated Plaintiff for alleged violations of Amtrak's Rules of Conduct. On August 21, 1995, Amtrak specifically alleged that Plaintiff "permitted and assisted unauthorized individuals to use [his] Rail Travel Privileges to obtain transportation on Amtrak resulting in a loss of revenue for the corporation." (Defendant's exhibit 11–13). On November 9, 1995, an administrative hearing was convened by a hearing officer in Amtrak's Office of Disciplinary Investigations concerning the alleged administrative charges against Plaintiff. The case against Plaintiff involves three instances of unauthorized travel. The hearing resulted in a finding that Plaintiff abused his Rail Travel privileges, defrauding Amtrak of potential revenues in excess of $1,300. Effective January 26, 1996, Plaintiff was terminated

from his employment with Amtrak by the Director of Amtrak's Empire Service Products Line, J. Wesley Coates, Jr. Plaintiff appealed his dismissal to the Director of Labor Relations, and that appeal was denied on March 18, 1996.

Plaintiff commenced this lawsuit on January 25, 1999, alleging discrimination, hostile work environment, and retaliatory termination. Plaintiff contends that his removal from service on August 16, 1995, and his subsequent termination from Amtrak, were racially motivated and in retaliation for complaints that he allegedly made to supervisors concerning discriminatory hiring practices. Defendant alleges, in contrast, that Plaintiff's employment was terminated based on its findings that he abused his rail pass privileges. Plaintiff also alleges that he was forced to contend with a hostile work environment while employed at Amtrak.

## II. DISCUSSION

### A. Summary Judgment

The standard for summary judgment is well-established. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in a light most favorable to the nonmoving party. *See City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Nweke v. Prudential Ins. Co. of America*, 25 F.Supp.2d 203, 214 (S.D.N.Y.1998) ("When the defendant provides convincing evidence to explain its conduct, and the plaintiff's contention consists of purely conclusionary allegations of discrimination, the Court concludes that no material issue of fact exists, and it may grant Summary Judgment in favor of the defendant."). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but "must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

When deciding whether a summary judgment motion should be granted in an employment discrimination case, the Second Circuit has held that additional considerations must be taken into account. *See Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1224 (2d Cir.1994). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue. *See Gal-* *lo*, 22 F.3d at 1224; *see also Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir.1989). Affidavits and depositions must be scrutinized for circumstantial evidence which, if believed, would show discrimination. *See Gallo*, 22 F.3d at 1224. Nonetheless, when the defendant provides convincing evidence to explain its conduct and the plaintiff's contention consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment in favor of the defendant. *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312–14 (2d Cir.1997); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995). "In other words, to defeat summary judgment, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Morris v. Amalgamated Lithographers of Am., Local One*, 994 F.Supp. 161, 168 (S.D.N.Y.1998) (*quoting Stern*, 131 F.3d at 312). It must be stressed that the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution. *See Gallo*, 22 F.3d at 1224.

## B. Statute of Limitations

Plaintiff's claims arise under 42 U.S.C. § 1981, which provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Section 1981, originally passed as the Civil Rights Act of 1870, prohibited racial dis-

crimination in the making and enforcement of private contracts, but it did not apply to conduct which occurred after the formation of the contract and which did not interfere with the right to enforce established contract obligations. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Section 1981 was amended by the Civil Rights Act of 1991, adding subsection (b) to § 1981. Subsection (b) defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."[1] Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071 (codified at 42 U.S.C. § 1981(b)).

■■■ Section 1981 does not contain its own statute of limitations. To determine the statute of limitations in federal practice, one must first look at what the basis of subject matter jurisdiction is in the action. In a diversity of citizenship case, state law is looked to for the applicable statute of limitations. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In a federal question case, however, where no federal statute supplies a time period for the particular claim, as such is the case here, the applicable period is "the state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 64

L.Ed.2d 440 (1980); see also *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) ("Because § 1981, like §§ 1982 and 1983, does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations."). The Supreme Court, following the rationale of *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which analyzed which state statute of limitations should apply to Section 1983 actions, stated that Section 1981 has a much broader focus than simply contractual rights and was basically a personal injury action like Section 1983. *See Goodman*, 482 U.S. at 661, 107 S.Ct. 2617. Therefore, the state statute of limitations period for personal injury actions should be borrowed in Section 1981 cases. *See id.* at 661–62, 107 S.Ct. 2617. In New York, the applicable statute of limitations in a federal civil rights case, including claims brought under Section 1981, is three years. *See Wilson v. Fairchild Republic Co., Inc.*, 143 F.3d 733, 739 n. 5 (2d Cir.1998) ("Section 1981 employment discrimination claims brought in New York are subject to that state's three-year statute of limitations."); *see also Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir.1990), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990); *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978) ("The applicable statute of limitations in a federal civil rights case brought in New York is the

---

1. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 185, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that the "make and enforce contracts" language of § 1981 prohibits discriminatory hiring but not discriminatory termination of employment. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (holding that section 1981 "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce estab-

lished contract obligations"). Congress responded to the *Patterson* decision by amending § 1981 with the enactment of the Civil Rights Act of 1991. *See* Pub.L. No. 102–166, 105 Stat. 1071; *see also* H.R.Rep. No. 102–40(II), at 2 (1991) (stating that one of the purposes of the Civil Rights Act of 1991 was to "respond to recent Supreme Court decisions by restoring the civil rights protections that were dramatically limited by those decisions").

three years provided by N.Y.C.P.L.R. § 214(2) liability based on a statute."); *Findlay v. Reynolds Metals Co.*, 82 F.Supp.2d 27, 36 (N.D.N.Y.2000).

 Plaintiff argues that this Court should apply the four-year statute of limitations prescribed by 28 U.S.C. § 1658. Section 1658 provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658. Section 1658 was enacted on December 1, 1990. *See* The Judicial Improvement Act of 1990, Pub.L. No. 101–650, Title III, § 313(a), 104 Stat. 5114. Plaintiff argues that, by virtue of the 1991 amendments to § 1981, his lawsuit is "a civil action arising under an Act of Congress enacted after [December 1, 1990]" and therefore, Section 1658's four-year limitation period is applicable.

As stated by the Third Circuit, Section 1658 can be read in a number of different ways. In *Zubi v. AT&T Corp.*, 219 F.3d 220, 222 (3d Cir.2000), the court examined the statute and pointed out three distinct approaches, recognized in existing case law, to interpreting Section 1658's application to Section 1981 claims.

1. "When an Act of Congress passed after December 1, 1990, creates a claim that did not previously exist, that claim "arises under an Act of Congress enacted after" December 1, 1990, even though the new statute creates the new claim by amending a previously existing statute. This view of § 1658, when applied in the

context of § 1981 of the Civil Rights Act of 1870, as amended by the Civil Rights Act of 1991, results in § 1981 claims based on the discriminatory termination of contracts being governed by the four-year federal limitations period, and all other claims based on § 1981 being governed by the state statute for personal injury claims.[2]

2. When an Act of Congress passed after December 1, 1990, amends a statute existing before that date in a manner that substantially alters its meaning, all claims accruing after the passage of the new statute "arise under an Act of Congress enacted after" December 1, 1990, without regard to whether an identical claim arising earlier could have been successfully pursued under the prior statute. This view of § 1658, when applied in the context of § 1981 of the Civil Rights Act of 1870, as amended by the Civil Rights Act of 1991, results in all § 1981 claims arising after the 1991 amendment being governed by the four year federal limitations period.[3]

3. When an Act of Congress passed after December 1, 1990, amends a statute existing before that date, as opposed to creating new law without reference to previously existing statutory language, all claims accruing after the passage of the amendment arise under an Act of Congress enacted before December 1, 1990, without regard to whether an identical claim arising earlier could have been successfully pursued under the prior statute. This view, when applied in the context of § 1981 of the Civil Rights Act of 1870, as amended by the Civil

---

**2.** *See, e.g., Miller v. Federal Express Corp.*, 56 F.Supp.2d 955, 965 (W.D.Tenn.1999). Barring any application of § 1658, the statute of limitations for a claim brought under Section 1981 in New York State is three years. *See Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 739 n. 5 (2d Cir.1998); *Tadros v. Cole-

man*, 898 F.2d 10, 12 (2d Cir.), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990).

**3.** *See, e.g., Alexander v. Precision Machining, Inc.*, 990 F.Supp. 1304 (D.Kan.1997).

Rights Act of 1991, results in all § 1981 claims accruing after the passage of the 1991 amendments being governed by the state limitations period for personal injury claims." [4]

*Zubi,* 219 F.3d at 222.

The first alternative is argued by Plaintiff. Defendant argues that the problem with this alternative is that it creates inconsistency. However, the practice of borrowing the most analogous state law also creates inconsistency. The legislative history of § 1658 reflects congressional concern about the practice of borrowing limitation periods from state laws to rectify deficiencies in federal statutes. As the Senate noted:

> Section 1658 provides a fall back statute of limitations ... for federal civil actions by providing that, except as otherwise provided by law, a civil action arising under an Act of Congress may not be commenced later than four years after the cause of action accrues. Statutes of limitations provide a specific time period after the contested event within which a case must be commenced. At present, the federal courts "borrow" the most analogous state law limitations period for federal claims lacking limitations periods. Borrowing, while defensible as a decisional approach in the absence of legislation, appears to lack persuasive support as a matter of policy. It also creates several practical problems: It obligates judges and lawyers to determine the most analogous state law claim, it imposes uncertainty on litigants; reliance on varying state laws results in undesirable variance among the federal courts and disrupts the development of federal doctrine on the suspension of limitation periods.

(The Implementation Act), Pub.L. No. 101–650, Title III, § 313(a), 104 Stat. 5114 (1990 & Supp. III 1991). The House Report on § 1658 contains similar language. Clearly, Congress desired to cure the problems of nonuniformity and uncertainty created under the state law borrowing practices. *See* H.R.Rep. No. 734, 101st Cong., 2d Sess. 24 (1990), U.S.Code Cong. & Admin.News 1990.

Additionally, the application of Section 1658 to the new cause of action created by the Civil Rights Act of 1991 will not undermine the settled expectations of plaintiffs in New York because Section 1658 acts to extend the limitation period allotted by the analogous state limitations period rather than limiting it. The primary expectation that must be fulfilled is that of the plaintiff and not the defendant. It is the interests of the plaintiff that must be protected, "the person who owns the claim and who is relying on the existing period in which to sue ..." New York. *See* David D. Siegel, Practice Commentary, 28 U.S.C. § 1658. In New York, plaintiffs will not be denied redress by implementing Section 1658 since the statute of limitations will be lengthened, rather than shortened.

Section 1658 applies to claims, or causes of action created by legislation enacted after December 1, 1990. Section 1658 refers to "a civil action arising under an Act of Congress," but "a civil action" may not be the most appropriate wording when determining the appropriate statute of limitations. Rather, it is best to refer to a each "claim" or "cause of action" individually. For example, if a plaintiff brings one claim pursuant to a federal statute, the whole "civil action" can be said to arise under the Act of Congress. However, where there are multiple claims, or causes of action, brought by a plaintiff, pursuant to multiple federal statutes, it is most ap-

---

**4.** *See, e.g., Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261 (M.D.Ala.1998).

propriate to determine the applicable statute of limitations for each claim, rather than one statute of limitations for all claims brought in this single civil action brought by plaintiff.

This Court finds that Section 1658 is applicable to Plaintiff's Section 1981 claims. With the passage of the Civil Rights Act of 1991, Congress created new substantive rights "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace." Pub.L. No. 102–166, § 3, 105 Stat. 1071. These new rights prevent discriminatory treatment after the contract formation stage and includes actions having a direct affect on a person's terms and conditions of employment. *See Miller v. Federal Express Corp.*, 56 F.Supp.2d 955, 965 (W.D.Tenn.1999). The Court adopts this analysis and holds that plaintiffs who invoke Section 1981 in a claim for discriminatory hiring will have their claims governed by a statute of limitations of three years, while plaintiffs who invoke § 1981 claiming discriminatory *termination* of employment will have their claims governed by a statute of limitations of four years. *See Zubi*, 219 F.3d at 224.

The Civil Rights Act of 1991 created new substantive rights after December 1, 1990, and, therefore, because the "amendment was not 'merely technical in nature' and ... it either created a new cause of action or restored a cause of action previously overlooked by the courts," *Miller*, 56 F.Supp.2d at 965, these new rights are subject to the four-year statute of limitations prescribed by Section 1658. This Court finds that by applying Section 1658

to Plaintiff's Section 1981 claims as the fall back statute of limitations prescribed by Congress, Congress' desire to develop uniformity among federal claims is furthered by establishing what law governs the cause of action. Plaintiff's claims are governed by Section 1658 and, therefore, not time barred by the analogous state time limitations.

## C. Plaintiff's Claims

### 1. Hostile Work Environment Under Section 1981

 Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987). An employee has the right to "work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To prevail on a hostile work environment claim, the plaintiff must establish (1) that the "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment;" *id.* at 67, 106 S.Ct. 2399, and (2) "that a specific basis exists for imputing the conduct that created the hostile environment to the employer."[5] *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999) *quoting Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation and internal quotation omitted).

---

**5.** "In analyzing 42 U.S.C. § 1981 claims, we apply the same standards as in Title VII cases." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000). See also *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1236 (D.C.Cir.1984) (holding that the standards used to determine what constitutes a hostile work environment is the same under Title VII and 42 U.S.C. § 1981); *see also Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir.1986) (holding that proof of liability for a racially hostile work environment is the same under Title VII and 42 U.S.C. § 1981).

### a. Hostile Environment

■ In *Harris v. Forklift Systems,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), a sexual harassment case,[6] the Supreme Court held that a hostile environment claim will succeed only where the conduct at issue is so "severe or pervasive" as to create (a) an " 'objectively' hostile or abusive work environment," and (b) the victim "subjectively perceive[s] the environment to be abusive." *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367. Since Plaintiff subjectively perceived his environment to be hostile and abusive, the question here reduces to whether the environment was "objectively" hostile. Plaintiff's allegations should thus be evaluated to determine whether a reasonable person who is the target of discrimination would find the working conditions so severe or pervasive as to alter the terms and conditions of employment for the worse. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367.

In *Harris,* the Supreme Court established a non-exclusive list of factors relevant in determining whether a given workplace is permeated with discrimination so "severe or pervasive" as to support a Title VII claim. 510 U.S. at 23, 114 S.Ct. 367. These include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance;" (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if

any, resulted. *Id.* at 23, 114 S.Ct. 367. The factors must be considered "cumulatively," so that we may "obtain a realistic view of the work environment." *Id., quoting Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 444 (7th Cir.1994).

■ Plaintiff alleges two incidents occurring within the four-year statute of limitations as the basis for his hostile work environment claim. Plaintiff first claims the use of the word "nigger" in the workplace and the use of this epithet was tolerated by management. From Plaintiff's pleadings, the use of this epithet was in reference to O.J. Simpson, or some aspect of the O.J. Simpson trial.[7]

Second, Plaintiff claims that in August of 1995, Walter Forsythe, an Amtrak Road Foreman, stated to Plaintiff "Larry, this is you, the only way there will be a black here is in this mural." (Plaintiff Ex. 5, ¶ 72). Forsythe's comments were made in reference to a mural on the wall in the Zone 3 offices which depicts an African–American engineer. Forsythe's statement was allegedly made in response to Plaintiff's comment that there is a lack of African–Americans working in the Zone 3 T & E section. (Plaintiff Ex. 23, ¶ 72)

■ Plaintiff's allegations fail to demonstrate a hostile work environment. Though offensive, the "utterance of an . . . epithet which engenders offensive feelings in a employee," is not severe enough to sufficiently affect the conditions of employ-

---

**6.** Generally, the same standards apply to both race-based and sex-based hostile environment claims. See *Torres,* 116 F.3d at 630 (noting that the standards for evaluating hostile environment claims are the same whether the alleged discrimination is based on race or sex); *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986) (applying sexual harassment case law in case involving Title VII racial harassment).

**7.** Plaintiff claims that during the O.J. Simpson trial, a statement commonly made in Plaintiff's presence was "J. N. L.", meaning "just nigger's luck." (Plaintiff Ex. 5, ¶ 77). Additionally, a "ballot box" was placed in the crew room where one could vote on Simpson's guilt or innocence. Above or near the box was a "J. N. L." sign. Plaintiff alleges that the box and sign stayed until the verdict in the O.J. Simpson trial. The verdict was read on October 3, 1995.

ment to implicate Title VII. *Meritor Savings Bank,* 477 U.S. at 67, 106 S.Ct. 2399; *see also Harris,* 510 U.S. at 21, 114 S.Ct. 367. Furthermore, at no time does Plaintiff allege that such epithets were directed toward him personally or in reference to him, and there is no claim that Plaintiff felt threatened or humiliated by the comments. In regards to the frequency of occurrence of the use of racial epithets, the Second Circuit has noted that "[i]ncidents that are 'few in number' and that occur 'over a short period of time' may fail to demonstrate a hostile work environment," *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000), *citing Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d Cir.1987), "[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). Plaintiff's allegations do not rise to the level of a "steady barrage." In sum, Plaintiff has not demonstrated that an incident or series of incidents interfered with his work or altered the conditions of his working environment. Accordingly, Defendant's summary judgment motion as to Plaintiff's hostile work environment claim is dismissed in its entirety.

## 2. Discrimination and Retaliation [8]

Plaintiff's second and third claims are for discrimination and retaliatory discharge. Plaintiff contends that both his removal from service and his subsequent termination were retaliatory and racially motivated. Retaliatory discharge occurs when "a retaliatory motive plays à part in [the discharge], ... whether or not it was

the sole cause ... [or] when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist." *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170 (2d Cir.1996) (*quoting Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993)). The allocation of burdens of proof in discrimination and retaliation cases follows the three-step burden shifting analysis enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In the context of a motion for summary judgment, Plaintiff must first demonstrate a prima facie case of discrimination and retaliation, after which Defendant has the burden of pointing to evidence that there was a legitimate, nonretaliatory / nondiscriminatory reason for the complained of action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir.2000); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996). If Defendant proffers such a reason, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the proffered legitimate reason is merely a pretext for impermissible retaliation / discrimination. *See id.* at 804; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

---

**8.** New York state courts have adopted the same analysis for discrimination actions arising under the New York State Human Rights Law. *See, e.g., Matter of Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 939, 498 N.Y.S.2d 776, 778, 489 N.E.2d 745, 747 (1985); *O'Connor v. Frawley,* 175 A.D.2d 781, 573 N.Y.S.2d 675, 676 (1st Dep't 1991); *Ioele v. Alden Press, Inc.,* 145 A.D.2d 29, 35, 536 N.Y.S.2d 1000, 1003 (1st Dep't 1989). Therefore, Plaintiff is required to prove the same essential elements to establish both his state and federal discrimination claims.

### · a. Prima Facie Case

 To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee was engaged in protected activity, or is a part of a protected class, and the employer was aware of that activity or class status; (2) the employee was qualified for the position; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir.2001), *quoting Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir.2000); *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817.

 The first of these elements— participation in a protected activity—Plaintiff need not prove that the conditions against which he protested actually amounted to a violation. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). Rather, Plaintiff must demonstrate only that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan*, 842 F.2d at 593 (quotation omitted). In this case, Plaintiff, an African–American, alleges that he was fired as a result of his comments that African–Americans were under-represented in employment in Zone 3. There can be no doubt that Plaintiff's complaints to management regarding the racial make-up of the Zone 3 workforce is a protected activity. *See Matima v. Celli*, 228 F.3d 68, 78 (2d Cir.2000) ("The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management.") (internal quotation marks omitted).

Second, there is no evidence to suggest that Plaintiff was not qualified to be an engineer and that he satisfactorily performed his duties. Additionally, suspension and termination from employment obviously qualify as an adverse action against Plaintiff.

 The fourth element of the prima facie case may be satisfied by a showing that the plaintiff's position remained open after he was discharged, or that he was replaced by someone outside his protected class. *See de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996). In the context of this case, when analyzing the fourth element, this Court equates "protected class" with minority status. Since Plaintiff was replaced by an individual who is not a member of a protected class, a white male, Plaintiff satisfies the fourth element necessary for a prima facie case. Plaintiff burden has been satisfied.

### b. Defendant's Non–Discriminatory Reasons and Pretext

 Having established a prima facie case of retaliation, there is a presumption of discrimination and the burden shifts to Defendant to articulate a legitimate, non-discriminatory basis for its actions. Defendant argues that Plaintiff was terminated based on an administrative record showing that Plaintiff abused his rail pass privileges, and that such abuse is deemed an act of theft. *See Rose v. Mendon Leasing Co.*, 969 F.Supp. 865, 867–68 (E.D.N.Y. 1997) (holding that termination of African–American employee for stealing gasoline from company was a legitimate, nondiscriminatory reason for discharge); *see also Sutera v. Schering Corp.*, 73 F.3d 13, 17 (2d Cir.1995) (holding that defendant, manufacturer of prescription drugs, articulated a legitimate nondiscriminatory reason for terminating plaintiff employee, namely

that plaintiff forged physician's signatures on records required to be kept regarding the distribution of pharmaceutical products). This is sufficient evidence to satisfy Defendant's burden in the *McDonnell Douglas* scheme.

▉▉▉ The burden, therefore, shifts back to Plaintiff to establish by a preponderance of the evidence that the reasons proffered by Defendant are a pretext for unlawful discrimination. "An employer's reason for termination cannot be proved to be a pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir.1998) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). "In the summary judgment context, this means that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for [taking an adverse employment action against] him is false and whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Kerzer*, 156 F.3d at 401 (*quoting Gallo*, 22 F.3d at 1225). "[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin*, 46 F.3d at 203.

Plaintiff argues that this Court should reject Defendant's argument as pretextual because Plaintiff was the only African–American engineer in Zone 3, and that Defendant "selectively enforced" its rules and regulations against Plaintiff due to his race. A demonstration of selective enforcement will satisfy Plaintiff's burden of showing that Defendant's reasons were pretextual.

▉▉ In this case Plaintiff argues that the disciplinary charges were brought against him in order to fire him. Plaintiff disputes many aspects of the alleged unauthorized use of his rail pass, the basis for his firing. Furthermore, Plaintiff argues that the only way the alleged unauthorized use could have occurred is with the knowledge of other white conductors. In other words, by shirking their duties, these white conductors allowed rail pass privileges to be abused, not only by Plaintiff, but by other white employees as well. By pointing to instances where conductors knowingly permitted unauthorized use of rail passes, Plaintiff infers that widespread unauthorized use of rail passes may exist, or at least, goes unnoticed by those conductors whose duty it is to catch such abuse. None of the other conductors have been investigated or subjected to any adverse employment action. Plaintiff's allegations serve to strengthen Plaintiff's argument that Defendant's non-discriminatory reasons were pretextual. Even where valid objective reasons are argued by Defendant for the discharge, the Court may find that Plaintiff has satisfied his burden of showing pretext. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170 (2d Cir.1996) (*quoting Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)) ("Retaliatory discharge in violation of Title VII occurs when a retaliatory motive plays a part in [the discharge], ... when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist.").

After viewing the evidence in the light most favorable to Plaintiff, as the Court is bound to do, the Court concludes that he has shown that his race may have been "at least one of the 'motivating' factors" for his termination. *Cronin*, 46 F.3d at 203. A

**136**

reasonable jury could find that Defendant's reasons were a pretext for unlawful discrimination. Plaintiff is able to establish a genuine issue of material fact as to whether the employer's reason for taking the adverse employment action against Plaintiff is false or more likely that a discriminatory reason motivated the adverse employment action. Because this case presents an issue as to the employer's intent, summary judgment is not appropriate. Defendant's Motion for Summary Judgment as to Plaintiff's discrimination and retaliation claims is therefore, denied.

## IV. CONCLUSION

Accordingly, it is hereby

ORDERED, that Defendant's motion for Summary Judgment is GRANTED in part and DENIED in part; and it is further

ORDERED, that Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's hostile work environment claim; and it is further

ORDERED, that Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's discrimination and retaliation claims; and it is further

ORDERED, that the Clerk of the Court shall serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.