**THO DINH TRAN, Plaintiff–Counter-Defendant-Appellee-Cross-Appellant,**

v.

**The ALPHONSE HOTEL CORP., d/b/a The Carter Hotels, Defendant–Counter-Claimant–Appellant–Cross–Appellee,**

**Dinh Truong Tran and Jude Hotel Corporation, d/b/a The Hotel Kenmore, Defendants–Appellants–Cross–Appellees.**

**Docket Nos. 00–9032, 01–75982.**

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 2002.

Decided Feb. 5, 2002.

Ronald Cohen, New York, NY, (Mark C. Sternick, Forest Hills, NY, on the brief) for Plaintiff–Counter–Defendant–Appellee–Cross–Appellant.

David M. Levy, Levy, Boonshoft & Spinelli, New York, NY, for Defendants–Appellants–Cross–Appellees.

Before FEINBERG and KATZMANN, Circuit Judges, and GLEESON, District Judge.*

---

KATZMANN, Circuit Judge.

The defendants appeal from the August 16, 2000 judgment of the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *J.*), finding, after a bench trial, that they (1) violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* by failing to pay the plaintiff sufficient wages for his work as a hotel maintenance worker and (2) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* by bribing union officials in a scheme that allowed them to pay their employees wages below the union rate. The defendants argue that the district court's finding that the plaintiff worked 91 hours per week in 1989 and 1990 and 63 hours per week in 1991 was clearly erroneous because the plaintiff did not produce sufficient evidence of his hours and admitted that he did not work such hours. The plaintiff cross-appeals the district court's calculation of the damages he is entitled to under the FLSA. The plaintiff argues that the district court incorrectly calculated his overtime rate based on the minimum wage when it should have been calculated using the higher union rate. The defendants also assert that the plaintiff's RICO claim is time barred by the statute of limitations. They argue that the plaintiff's amended complaint, which added a RICO action against the defendants based on predicate acts of bribery and was filed after the RICO statute of limitations had expired, does not relate back to the plaintiff's original complaint, which did not describe any acts of bribery. Moreover, the defendants contend that the plaintiff did not establish that the bribery was the proximate cause of his injury as required by RICO. Finally,

---

* The Honorable John Gleeson, United States District Court for the Eastern District of New York, sitting by designation.

the plaintiff cross-appeals the district court's refusal to reinstate his Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") and state law claims, which were dismissed because the plaintiff failed to first seek arbitration. The plaintiff contends that the claims should have been reinstated after his discovery of bribery that he alleges made the union grievance process ineffective.

The judgment of the district court is affirmed in part, reversed in part, and remanded with instructions to enter judgment in accordance with this opinion.

## BACKGROUND

### I. Facts

The plaintiff's allegations arise from his work at two Manhattan hotels, defendant The Carter Hotels, which is located at 250 West 43rd Street, New York, NY, and defendant Hotel Kenmore, which is located at 145 East 23rd Street, New York, N.Y. (the "Hotels"). At the time of the plaintiff's employment, the Hotels were controlled and operated by Defendant Dinh Truong Tran through two corporations, defendants Alphonse Hotel Corporation and Jude Hotel Corporation. The Hotels are members of the Hotel Association of New York, which is party to a collective bargaining agreement (the "CBA") with the New York Hotel and Motel Trade Council, AFL–CIO.

The plaintiff came to the United States from Vietnam in 1982 when he was sixteen. His entry was sponsored by Dinh Truong Tran who gave him room and board at The Carter Hotels and a job. From 1987 to 1991, the plaintiff worked as a maintenance worker at the Hotels, performing jobs including carpet installation, plumbing, electrical repair, painting, plastering, window replacement, wallpaper hanging, elevator repair, and room cleaning.

The plaintiff was an official worker with union membership until July 1988, when he moved out of The Carter Hotels and left to work for another employer after a dispute with Dinh Truong Tran concerning back wages. The plaintiff returned to work for the defendants from January 1989 to July 1991 but his employment was not reported to the union. The plaintiff terminated his employment with the defendants on July 4, 1991.

The plaintiff claims that he worked more than 90 hours per week during his tenure with the defendants except towards the end of his employment in 1991 when he worked approximately 60 hours per week. The plaintiff alleges that the defendants failed to pay him the full wages, including overtime, that he is entitled to for his employment during this period, and that the defendants bribed union officials in a scheme to induce union officials not to enforce the CBA at the Hotels.

### II. Prior Proceedings

#### A. Initial Dismissal on Summary Judgment and Reinstatement of the FLSA Claim after Appeal

The plaintiff filed an action in the United States District Court for the Southern District of New York alleging claims under the FLSA and state law for breach of contract, fraud, and unjust enrichment. The defendants moved for summary judgment. The district court dismissed the plaintiff's state law claims on the ground that under the CBA the plaintiff was required to arbitrate these claims but failed to do so. *See Tran v. Tran*, 860 F.Supp. 91, 94–96 (S.D.N.Y.1993). In addressing the FLSA claims, the district court asked the parties to brief the issue of whether the CBA also required the plaintiff to submit his FLSA claims to arbitration. *Id.* at 96.

The defendants submitted a brief on the issue but the plaintiff did not. Instead, the plaintiff moved for leave to amend his complaint to add a claim based on the LMRA. The district court then dismissed the case and denied the motion to amend, holding that under the CBA the plaintiff was required to arbitrate any FLSA and LMRA claims. *See Tran v. Tran*, 847 F.Supp. 306, 309–11 (S.D.N.Y.1994).

The plaintiff appealed the dismissal of his claims. This Court reversed the district court's dismissal of the FLSA claim and remanded the claim to the district court for further proceedings, but affirmed the dismissal of the plaintiff's state law and LMRA claims. *See Tran v. Tran*, 54 F.3d 115 (2d Cir.1995).

B. The Plaintiff's Motion for Leave to Amend the Complaint to Add a RICO Claim

On remand, the plaintiff claimed to have discovered new evidence that the defendants had bribed the union. He moved pursuant to Fed.R.Civ.P. 54(b) to vacate the district court's order dismissing his LMRA and state law claims, and also moved for leave to amend his complaint to add a RICO action. The district court denied the plaintiff's motion to vacate because the "newly discovered evidence of bribery of union officers does not obviate the requirement that plaintiff attempt to utilize the union grievance procedure before bringing a claim based on section 301 of the LMRA." *Tran v. Tran*, No. 91 Civ. 6818, 1998 WL 19996, at *2 (S.D.N.Y. Jan. 21, 1998). The district court also reasoned that there was no evidence that the bribery influenced the CBA's arbitration procedures. *Id.* The district court, however, granted the plaintiff leave to amend his complaint to add a RICO claim against the defendants. *Id.* at *2–3. The defendants filed a motion to reconsider the district

court's order granting leave to amend. The district court denied the motion, concluding that the RICO claim related back to allegations in the original complaint and that the bribery would toll the statute of limitations. *See Tran v. Tran*, No. 91 Civ. 6818, 1998 WL 229279, at *1 (S.D.N.Y. May 6, 1998).

C. The Bench Trial

The plaintiff waived his right to a jury trial and the district court conducted a bench trial on June 6, 7, 8, and 9, 2000. At the trial, the plaintiff introduced evidence of the hours he worked at the Hotels. The plaintiff testified that he usually worked from 8:00 a.m. to 9:00 p.m., seven days a week from 1989 to 1990. The plaintiff also testified that he labored fewer hours beginning in 1991 when he worked from 8:00 a.m. to 5:00 p.m. seven days a week. The plaintiff called one of his former co-workers to corroborate this testimony. This co-worker testified that he worked the same hours as the plaintiff, who he said worked from 8:00 a.m. to 9:00 or 10:00 p.m. seven days a week from 1987 to 1993.

In response to the plaintiff's case, defendant Dinh Truong Tran denied the allegations and the defendants entered into evidence cashed checks made out to the plaintiff for his work. The checks cashed by the plaintiff from 1989 to 1991 totaled $13,648.91. The defendants also produced certain records, which they argued establish that they paid the plaintiff approximately $30,000.00 from 1989 to 1991. The defendants also established that the plaintiff purchased two Cadillacs in 1989 and 1990 and certain power tools. Finally, the defendants argued that the plaintiff had signed a release stating that the defendants only owed him $1,533.11. The plaintiff claimed that he did not know what he was signing and could not read the document, which was written in English.

The plaintiff also introduced evidence that the defendants bribed union officials through the testimony of La Tran, who was an intimate advisor of defendant Dinh Truong Tran. La Tran testified that defendant Dinh Truong Tran wanted to reduce the workforce at the hotel, that he saw defendant Dinh Truong Tran pay bribes to union representatives, and that non-union workers were instructed to hide when union representatives visited the hotel. The plaintiff corroborated this testimony. The defendants argued that La Tran was biased because of an earlier dispute against the defendants.

After the bench trial, the district court issued findings of fact and conclusions of law. *Tran v. Tran,* No. 91 Civ. 6818, 2000 WL 1099906 (S.D.N.Y. Aug. 4, 2000). The district court found the plaintiff's testimony with respect to his hours credible. The district court concluded that the plaintiff worked 91 hours per week from 1989 to 1990 and 63 hours per week in 1991. The district court determined that the plaintiff was not bound by the waiver because he did not understand what he was signing. Moreover, the district court found that while the statute of limitations for FLSA claims is typically two years, an exception extending the statute of limitations to three years applied because the defendants' violation of the FLSA was willful. Thus, the district court held that the plaintiff could recover wages for the period from January 1989 to July 1991.

The district court calculated damages for the defendants' violation of the FLSA by awarding the plaintiff the statutory minimum wage of $4.25 per hour for the first 40 hours per week, and an overtime rate of $6.38 per hour for any hours in excess of 40 hours for the hours he worked from 1989 to 1991. This figure totaled $59,754.75. After subtracting the $13,648.91 paid to the plaintiff, the damages totaled $46,105.85. The district court also subtracted $7.75 a week for room and board, a total of $1007.50, resulting in total damages of $45,098.35. Because the violation was intentional, the district court awarded the plaintiff liquidated damages and doubled the figure to $90,196.70.

The district court also determined that the defendants had violated RICO through a scheme to undermine enforcement of the CBA by bribing union representatives. The district court found La Tran's testimony with respect to the payment of bribes by defendant Dinh Truong Tran to be credible. The RICO violation, the district court stated, allowed the defendants to employ the plaintiff without complying with the CBA. Therefore, it calculated the damages by estimating the amount the plaintiff would have been paid if he had been a union worker. The net amount of these wages was $199,832,85. With treble damages, the total RICO damages was $599,498.55. Because the RICO and FLSA damages were based on the plaintiff's lost wages, the district court held that there could be no double recovery and the plaintiff was only entitled to the $599,498.55 in RICO damages. The district court entered judgment for this amount.

The defendants moved for reconsideration and the plaintiff moved for an award of attorney's fees. The district court denied the motion for reconsideration and granted the motion for attorney's fees. *See Tran v. Tran,* 166 F.Supp.2d 793 (S.D.N.Y.2001). The defendants filed a timely notice of appeal.

## DISCUSSION

In reviewing a district court's judgment after a bench trial, we review its findings of fact for clear error and conclusions of law *de novo.* Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City,* 470 U.S. 564,

573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Ortho Pharm. Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 693–94 (2d Cir.1994). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 168 (2d Cir.2001) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

## I. The FLSA Claim

### A. The Number of Overtime Hours Worked by the Plaintiff

The FLSA requires employers engaged in commerce to pay their employees a minimum wage, which was $4.25 per hour during the plaintiff's employment by the defendants. *See* 29 U.S.C. § 206(a)(1). The FLSA also mandates that employers engaged in commerce pay their employees a "rate not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The bulk of the damages awarded to the plaintiff arises out of the defendants' alleged failure to pay the plaintiff for the overtime hours that he worked. The defendants advance a number of arguments challenging the district court's factual findings with respect to the number of hours the plaintiff worked each week.

■ The defendants first argue that there is insufficient evidence to support the district court's finding that the plaintiff worked more than 40 hours a week from 1989 to 1991. However, the defendants did not produce records that definitively established the number of hours worked by the plaintiff. When accurate records or precise evidence of the hours worked do

not exist, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *accord Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 66–67 (2d Cir. 1997).

■ The district court found that the plaintiff worked 91 hours in 1989–90 and 63 hours a week in the first half of 1991. The testimony at trial clearly supports this conclusion with respect to the plaintiff's hours from 1989 to 1990. The plaintiff testified that he worked thirteen hours a day for seven days a week in 1989 and 1990. The plaintiff's testimony was corroborated by a co-worker who worked the same hours as the plaintiff. However, La Tran, an intimate advisor of defendant Dinh Truong Tran, testified that non-union employees generally only worked about eight hours per day, seven days a week. But La Tran also conceded that he could not personally confirm that the workers did not work more hours. The district court essentially credited the plaintiff's corroborated testimony over testimony that was ambiguous. While the district court could have permissibly reached a different conclusion, its choice to believe the plaintiff and his corroborating witness was not clearly erroneous. *See Anderson,* 470 U.S. at 574, 105 S.Ct. 1504 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

■ The district court's conclusion that the plaintiff worked 63 hours per week in 1991 was also not clearly erroneous. The plaintiff claims he worked nine hours per

day for seven days a week from January to July 1991. La Tran's testimony corroborated this claim for the most part, although he contended that employees at the Carter Hotel worked eight hours per day, seven days a week. Because the difference in testimony was a de minimus one hour per day, and La Tran had conceded that he could not confirm whether employees actually worked more hours, the district court's finding with respect to the plaintiff's hours in 1991 was not clearly erroneous.

■ The defendants argue that this Court should find that the plaintiff did not labor in abusive hours and conditions because he voluntarily returned to work for the defendants after leaving to work for another employer in 1989. This contention is troubling and insensitive. No evidence in the record establishes that the plaintiff returned to the Hotels because he thought that he would have a better life there. Based on the record before us, it is most likely that the plaintiff returned to the Hotels because his new employment did not work out and he had no other opportunities elsewhere. Individuals with poor English language skills simply may have no other choice than to endure abusive and illegal working conditions to make a basic living. The fact that the plaintiff "voluntarily" returned to employment with the defendants does not establish that he did not work overtime hours.

■ The defendants argue that the district court's findings with respect to the plaintiff's hours are contradicted by earlier statements the plaintiff made in his pleadings. While the plaintiff's original complaint alleged that he worked 116 hours per week, his first amended complaint alleged that he worked 54 hours per week. The defendants claim that the plaintiff's statement in his first amended complaint was a binding judicial admission that he

only worked 54 hours per week from 1989 to 1991. However, the plaintiff's first amended complaint was withdrawn prior to trial and replaced with a second amended complaint that did not specify the number of hours the plaintiff worked. After the trial, the plaintiff moved to amend his complaint to conform to the evidence. *See Tran*, 166 F.Supp.2d at 796–97. A statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission. *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir.1929). While the factfinder may very well find that such a contradictory statement reduces the credibility of the witness, *see id.*, in this case, the plaintiff's testimony was corroborated by another witness. Therefore, it was not clearly erroneous for the district court to find that the plaintiff worked more than 54 hours per week despite the plaintiff's earlier statement in his first amended complaint.

■ The defendants also contend that it was the law of the case that the plaintiff only worked 40 hours per week in 1991. After the defendants' first motion for summary judgment, the district court concluded that the plaintiff had admitted to working only 40 hours a week in 1991. This Court then affirmed that finding when ruling on the plaintiff's appeal. But the defendants' law of the case argument was never presented to the district court before, during, or after the bench trial. The argument is not in the defendants' proposed findings of fact or conclusions of law and was not made in the defendants' motion for reconsideration. Instead, the number of hours worked by the plaintiff was contested at trial. As we assess the defendants' argument that the law of the case applies, we note that we generally will not decide an issue first presented on ap-

peal unless doing so is "necessary to avoid manifest injustice." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 822 (2d Cir.1997) (internal quotations and citation omitted); *see also Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir.1999) ("Having failed to make the present argument to the district court, plaintiff will not be heard to advance it here."). Here, we discern no manifest injustice in not considering the defendants' law of the case argument. Given the myriad of issues that are before the district court in a bench trial, it was the defendants' responsibility to bring this prior finding to the district court's attention, preferably prior to the commencement of trial. The evidence at trial established that the plaintiff worked more than 40 hours per week in 1991. Moreover, the plaintiff could have moved to vacate the prior finding that he only worked 40 hours per week in 1991 based on the evidence adduced at trial pursuant to Fed.R.Civ.P. 54(b) because the district court's order was only a partial grant of summary judgment. *See* Fed.R.Civ.P. 54(b); *see also United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir.1982) ("A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment ...") (citations omitted). The plaintiff did not have this opportunity because the defendants did not argue at trial that the plaintiff's admission was law of the case. It is likely that the district court would have revised its earlier finding that the plaintiff worked only 40 hours per week if the defendants had advanced its law of the case argument. Thus, we affirm the district court's finding that the plaintiff worked 63 hours per week in 1991.

Finally, the defendants argue that the district court did not adequately take into account the fact that many of their records had been turned over to federal investigators in considering their argument that the

plaintiff did not work overtime. This argument is too amorphous to serve as a basis for overturning the district court's factual findings. The defendants point to general testimony by La Tran that he turned over time cards to federal investigators. But La Tran's testimony does not establish that the plaintiff filled out any time cards and that La Tran turned over such time cards to the authorities. The defendants had the opportunity to ask the plaintiff whether he filled out time cards, but the defendants do not cite to a page in the record where they asked such a question at trial. The fact that La Tran may have turned over records that may have had some bearing on the plaintiff's hours does not make the district court's reliance on the plaintiff's corroborated testimony clearly erroneous.

In sum, the district court's factual findings with respect to the hours worked by the plaintiff from 1989 to 1991 were not clearly erroneous.

**B. Calculation of Damages**

**1. The Plaintiff's Overtime Rate**

The plaintiff cross-appeals and argues that the district court did not calculate his overtime pay properly. When an employee works more than forty hours a week, the employer is generally required to pay overtime compensation at "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employer who violates this provision is liable for any "unpaid overtime compensation." 29 U.S.C. § 216. The district court calculated the plaintiff's overtime rate at $6.38 per hour, or one and a half times the $4.25 per hour statutory minimum. In essence, the district court assumed that the plaintiff's "regular rate" was $4.25 per hour. The plaintiff argues that his regular rate was the union rate

paid to a paper hanger/sign painter, which would result in an overtime rate of between $18.12 and $19.12 per hour.

The district court erred by using the statutory minimum instead of the regular rate in determining the plaintiff's overtime rate. According to the Department of Labor regulations, "[i]f the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate." 29 C.F.R. § 778.107. This regulation is consistent with federal case law interpreting 29 U.S.C. § 207. *See, e.g., Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) ("an intended effect [of the FLSA] was to require extra pay for overtime work ... even though their hourly wages exceeded the statutory minimum."); *Mumbower v. Callicott,* 526 F.2d 1183, 1187 (8th Cir.1975) ("This provision [29 U.S.C. § 207(a)(1)] has been uniformly interpreted to require the fifty percent overtime premium to be added to the actual wage paid, not to the statutory minimum wage . . . .").

Under the circumstances of this case, the plaintiff's regular rate should be the higher union rate.[1] While the plaintiff was a union member when he was employed by the defendants from January 1987 to July 1988, he was not a reported employee when he worked from 1989 to 1991. However, after the defendants' first motion for summary judgment, the parties agreed that the plaintiff was a union member from 1989 to 1991. *See Tran,* 860 F.Supp. at 93. Moreover, even non-union members of the hotel were governed by the CBA. The plaintiff performed union tasks and his hours were such that he was not a part-

time worker and would be covered under the CBA. Given the totality of the circumstances, the plaintiff's regular rate was that of a union member.

### 2. Wages Actually Paid to the Plaintiff

█ The defendants argue that the district court wrongly concluded that the plaintiff was paid $13,648.91 from 1989 to 1991 when the defendants produced payroll records that they claim establish that the plaintiff was paid about $30,000.00. The district court based its finding on the fact that the defendants only produced $13,648.91 in checks cashed by the plaintiff. Because the defendants' payroll records were not corroborated by cashed checks, the district court's decision was not clearly erroneous. The fact that the defendants could only produce $13,648.91 in cashed checks from 1989 to 1991 is consistent with the plaintiff's testimony that there were some weeks when he did not receive his paycheck. Under the circumstances, the district court could properly base its finding on records that confirmed the amount of wages actually received by the plaintiff from the defendants.

The defendants also argue that the plaintiff must have received more in wages because he purchased two automobiles in 1989 and 1990 as well as power tools for his work. But other than the fact that one of the vehicles cost $7,500.00, the defendants did not introduce any evidence with respect to the cost of those items. Moreover, the defendants neglect to take into account that while the plaintiff received only $13,648.91 from 1989 to 1991, he also worked at the Hotels prior to 1989, and may have accumulated additional savings in that period.[2] Given the plaintiff's

---

1. In fact, the defendants did not contest the plaintiff's argument that his regular rate was the union rate in their briefs on this appeal.

2. The plaintiff could not bring an FLSA claim for those years because of the statute of limitations.

around-the-clock hours, and because his room and board costs were covered by the defendants, it is possible that he was able to save a substantial portion of his wages.

Finally, the defendants argue that the plaintiff conceded that he was not owed wages by signing a receipt at the end of his employment. The district court correctly rejected this argument. The district court properly credited the plaintiff's testimony that he did not understand what he was signing, and that he signed the document because he was directed to do so. Moreover, the receipt itself is vague, and does not specify whether it refers to salary for the current pay period or for past pay periods. The plaintiff's FLSA claim includes wage periods prior to the end of his employment and is not clearly covered by any waiver.

3. Recalculation of the Plaintiff's FLSA Damages

Using the union rate as the baseline, the plaintiff's total overtime wages would have been $108,664.24.[3] Adding his wages of $22,100 for non-overtime hours[4] results in a total of $130,764.24. After subtracting the $13,648.91 he was actually paid and $1007.51 for room and board, the total FLSA damages equals $116,107.82. After doubling this amount to account for liquidated damages, the plaintiff is entitled to $232,215.64.

II. The RICO Claim

A. The Statute of Limitations

■■■ The defendants contend that the district court should not have allowed the plaintiff to amend his complaint to add the RICO claim. Civil RICO claims are subject to a four-year statute of limitations that begins to run "when the plaintiff discovers or should have discovered the RICO injury." *In re: Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir.1998). The plaintiff suffered his alleged RICO injury of lost wages, at the latest, in July 1991, which means that an action would have been timely if it had been filed in July 1995. The plaintiff did not file his motion to amend the complaint until July 8, 1997 based on his discovery of bribery.

■■■ The district court granted the motion to amend on the basis that the amendment adding the RICO claim "relates back" to the date of the original pleadings. We review a district court's decision that an amendment "relates back"

---

3. The union rate from January 1, 1989 until July 31, 1990 was $12.08 per hour, resulting in a $18.12 per hour overtime rate. The union rate from August 1, 1990 until July 4, 1991 was $12.75 per hour, because an amendment to the CBA provided for a 5.5% wage increase for all workers on August 1, 1990, resulting in a $19.12 per hour overtime rate The plaintiff worked 91 hours per week in 1989 and 1990, meaning that he worked 51 overtime hours per week in those years. The plaintiff worked 63 hours per week for 26 weeks in 1991 meaning that he worked 23 overtime hours per week in those years.

Thus, the plaintiff's total overtime pay for that period can be calculated by multiplying the overtime rate by the number of overtime hours worked in each respective year.

| | | | |
|---|---|---|---|
| 1989 | $18.12 × 51 × 52 | = | 48,054.24 |
| 1/1/90 to 7/31/90 | $18.12 × 51 × 30 | = | 27,723.60 |
| 8/1/90 to 12/31/90 | $19.12 × 51 × 22 | = | 21,452.64 |
| 1/1/91 to 7/4/91 | $19.12 × 23 × 26 | = | 11,433.76 |
| Total Overtime: | | = | 108,664.24 |

4. This figure was calculated by multiplying the minimum wage by a 40 hour work week and the 130 weeks worked by the plaintiff from January 1, 1989 to July 4, 1991.

for an abuse of discretion. *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir.1998). An amendment "relates back" when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." Fed.R.Civ.P. 15(c)(2). For a newly added action to relate back, "the basic claim must have arisen out of the conduct set forth in the original pleading...." *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). "The pertinent inquiry ... is whether the original complaint gave the defendant fair notice of the newly alleged claims." *Wilson,* 143 F.3d at 738.

If the original complaint referred to general acts of fraud or other predicate acts that might support a RICO claim, then a later amendment adding a RICO claim would "relate back" to the original complaint. *See Benfield v. Mocatta Metals Corp.,* 26 F.3d 19, 23 (2d Cir. 1994). Even if the description of such an act of fraud was not fully developed or specifically described as part of a RICO conspiracy, it would put the defendants on notice that the conduct was at issue. But the plaintiff's original complaint makes no reference to any acts of bribery of union officials and bribery is the only predicate act that could give rise to a RICO action in this case. If an amendment adds a new claim based on an act that was not alleged in any form in the original complaint, it does not relate back to the original complaint. *See Gomes v. Avco Corp.,* 964 F.2d 1330, 1333–34 (2d Cir.1992) (holding that an amended complaint adding an act of discrimination that was not in the original complaint did not "relate back"). Rather than merely adding a new legal theory based on the same facts as those presented in the original complaint, the plaintiff's amendment introduced a significant new

factual allegation that fundamentally changed the nature of the allegations, both factual and legal, that the plaintiff was asserting against the defendants. In rejecting the defendants' statute of limitations argument, the district court reasoned that the plaintiff's receipt of less than minimum wage in itself raised the possibility of illegal conduct. But the allegation that the defendants underpaid the plaintiff did not foreshadow the later allegation that the defendants schemed to undermine the union by bribing union officials. The only illegal conduct that was described by the original complaint was a violation of the FLSA. Therefore, we find that the district court abused its discretion in holding that the amendment adding the RICO claim "relates back" to the original complaint.

The district court alternatively held that the plaintiff would have a timely RICO action under the doctrine of "equitable tolling." The Supreme Court has rejected the theory that the plaintiff must discover both a RICO injury and a pattern of RICO activity before the RICO statute of limitations begins to run. *See Rotella v. Wood,* 528 U.S. 549, 553–54, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). Thus, the plaintiff cannot argue that the statute of limitations was tolled until he discovered the bribery. However, the statute of limitations can be tolled if the plaintiff establishes both that there was "fraudulent concealment" of the violation and the plaintiff exercised "due diligence" to discover the claim. *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194–95, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the na-

ture of the claim within the limitations period'; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 543 (2d Cir.1999), *cert. denied*, 529 U.S. 1109, 120 S.Ct. 1959, 146 L.Ed.2d 794 (2000).

 The plaintiff did not establish any of the elements of equitable tolling at trial and did not argue in its post-trial briefs that he had done so. The plaintiff did not produce any evidence establishing that the defendant fraudulently concealed the bribes. Moreover, the plaintiff did not show that he exercised "due diligence" in this case. The lawsuit was brought in 1991, yet the plaintiff did not make allegations of bribery until 1997. The plaintiff knew that the defendants were not enforcing union standards and could have explored his RICO theory prior to 1997. It is clear that the plaintiff did not meet his burden of affirmatively establishing that the doctrine of equitable tolling should apply. Thus, his RICO claim must be dismissed as untimely.[5]

### III. LMRA and State Tort Claims

 The plaintiff cross-appeals the district court's refusal to reinstate his LMRA and state tort claims upon his production of new evidence of bribery. He argues that the bribery shows that the union had repudiated the CBA and establishes that he would not have had a remedy under the CBA. But the fact that there is evidence that the defendants bribed the union officials who came by the hotel does not establish that the entire arbitration system has been disabled. While the plaintiff speculates that the bribes nullified the grievance procedure, he did not submit any

evidence at trial that would establish that the bribery had any influence on the Union's arbitration mechanism. Even if there was evidence supporting the plaintiff's allegations, the plaintiff did not submit a timely arbitration request to resolve these claims. The district court's dismissal of those claims was based on this lack of a timely request, *Tran*, 847 F.Supp. at 310, and this Court affirmed that dismissal. *See Tran*, 54 F.3d at 118. The plaintiff did not choose to forego filing a timely arbitration claim in 1991 based on the belief that the bribery had corrupted the process as he did not discover such bribery until 1997. The district court properly refused to reinstate the plaintiff's LMRA and state law tort claims.

### CONCLUSION

For the reasons discussed above, we hold that:

(1) the district court's factual findings with respect to the hours worked by the plaintiff and wages actually received by the plaintiff were not clearly erroneous;

(2) the district court should have calculated the plaintiff's overtime rate based on the union rate, resulting in a recalculated FLSA damages award of $232,215.64;

(3) the plaintiff's RICO claim is dismissed as time-barred by the statute of limitations, and thus, the district court's award of RICO damages to the plaintiff is vacated;

(4) the district court properly refused to reinstate the plaintiff's LMRA and state tort claims.

---

**5.** Because we find that the plaintiff's RICO claims are barred by the statute of limitations, we do not address the issue of whether the

plaintiff established proximate cause for his RICO claims.

38

The case is remanded with instructions to enter judgment in accordance with this opinion.