**131 MAIN STREET ASSOCIATES; 237 Mamaroneck Investment Associated; Thomas J. Allison, III; David Alter; Deborah B. Alter; Morton Antkies; Harold I. Apolinsky; Stuart Bacon; Bedford Commercial Corp.; Sanfurd G. Bluestein, M.D.; Harvey Beker; Seymour Bessin; Norman T. Blumenstock; M. Brown; Capital Formation Association; Vito Cangelosi; West C & H Corp.; Clinton Investments; Seymour Cohen; John W. Coleman, Dr.; Crystal Partnership; John McGovern; Jane Neisner; Contr Account/Bedford**

Commercial Corp.; Estate of Charles E. Lalaune; Angelina C. Lorant; David Berdon & Co.; Sarinda Dranow; Meyer Duchin; Albert Dweck; Morris Dweck; Robert Dweck; Clifford Edmond, Jr.; Eugene W. Frisk; Clairborne W. Futch; Alan Gibstein, M.D.; Isaac Gielchinsky, M.D.; Samuel Gifford, S.A.; Arthur Glick; Diane Glick; G & S Ventures; Goorland & Betesh; Theodore Goldberg, M.D.; Mannie Halbert; Harold Hertanu; Milton Hoffman; Martin Hoffman; Heleva Hoffman; Hudson Commercial Investing Co.; Brian Ingber; Jat Associates; Robert D. Kaliban; Patricia K. Kaliban; Kapetscopa (New York General Partnership); Louis Paul Kassouf; Rubin J. Katz; John Kelly; Jay Kennedy; John A. Lagrua, Jr.; Krynski–Lesnick Partnership; Emiel Leepson; Lenore Leepson; Stuart Lilien; Kenneth E. Lebensburger; John W. Lombardo, M.D.; Maple St. Associates; Jack E. Maurer; Marvin May; M & B Partnership; Mayer Properties; Meckoe Investment Co.; Duncan McIntrye; L. Nelson, Dr.; Robert B. Nemeroff, D.D.S.; Nemlane; Robert J. Newman; Paterson Eye Associates; Harriet L. Perlman; Gerald S. Peretz; Julian Podell; Ben Posner; Premier Associates; Lewis J. Rappoport, Esq.; Lester Raskin, Esq.; Meyer Reback; Bo Reback; George Rich; Richard Verona; Robert M. Rosenthal; Steve Roland; Lipset Roland; Stephen I. Rudin; Lewis Ruge; Vernon G. Schimmel; Maurice Shamah; Steven Shamah; Robert L. Silverman; Arthur Singer; Grant Smith; Gilbert L. Snyder; Special Account; Gerald Steiglitz; Fred Stoner; Arnold F. Sward, Jr.; Morton Teich, M.D.; Irving Teicher; Donald B. Vaello; Gilbert Weiss; Stanley Weiss; Semour Weiner; John M. Wologast; Saul Yellin; Michael Zager; B M & W Associates; Ralph Conelli, Sr.; Ralph Conelli, Jr.; John Shea, Dr.; Max On Behalf of Goorland & Betesh; Bernard Tobin; Asher B. Dann; William Argentieri; Stanley Gurewitsch; Ray Gurewitsh; Eric Nemeroff; Rose Gurewitsch; Arney Gurewitsch; Prayer Candle Co., Plaintiffs–Appellants,

v.

Bernhard F. MANKO, also known as Fred Manko; Jon J. Edelman; Robert G. Bushnell, Jr.; Arbitrage Management; Government Clearing Company; Government Arbitrage; Federal Arbitrage; Government Securities Trading Corporation; Arbitrage Group; Sectra Limited Partnership; Treasury Group; Cambridge Financial Group, World Option Trading Company; Universal Arbitrage Trading Company; Conarbco; Midopco; Government Arbitrage Trading Company; T.S.M. Holding Corp.; Barry Lyman; Cralin Associates, Inc.; Richard A. Josephberg; Ivan A. Gross; Jeffrey L. Feldman; Hugh Janow; Jeffrey A. Starr; Archibald Devlin, Helene Strusiner; Steven M. Taslitz; Wade H. Rowland; Evelyn H. Simon; Cosmopolitan Planning Corporation; Morris David De Young; Ethan H. Schwartz; Alan Steven Cohen; Virginia A. Mcgathey; John A. Possidoni; Vincent Tese; James E. Sinclair; Robert Mauris; Charles Genovese; John F. Mann; Catherine Sawyer; Joseph Bryant; Robert Carlock; Barbara Kanter; Eleanor Goudreau; Patrick Patricola; Frank Jeremiah; Government Trading Company; Metropolitan Securities Company; Hedged Securities Corporation; Aries Securities Company; Palisades Planning Corp.; Richard Bandel; Peter Patricola, Defendants–Appellees.

Docket No. 02–7140.

United States Court of Appeals,
Second Circuit.

Dec. 20, 2002.

Nicholas M. De Feis, De Feis, O'Connell & Rose, P.C., New York, NY, for Plaintiffs–Appellants.

Stephen E. Kesselman, Brief, Justice, Carmen, Kesselman & Kleiman, L.L.P., New York, NY, for the Defendant–Appellee Jon J. Edelman.

Present MESKILL, NEWMAN and POOLER, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

This action arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Beginning in 1977, Defendant–Appellee Jon Edelman, along with others, allegedly in-

duced Plaintiffs–Appellants to invest in a series of limited partnership tax shelters.[1] However, the tax losses that Edelman and his co-conspirators purported to generate for their investors were disallowed by the Internal Revenue Service ("IRS") because the transactions were not legitimate. Edelman and his co-conspirators also looted the investors' money by awarding themselves fees and commissions for bogus transactions. In 1979, Edelman and his co-conspirators allegedly began supplying the investment partnerships' outside auditors with incomplete information to prepare the partnerships' tax returns and financial statements. Beginning in 1982, Edelman and his co-conspirators allegedly entered the partnerships into prearranged and bogus repurchase transactions with an inactive corporation. Between 1985 and 1988, the IRS sent notices to investors disallowing certain income and expense items, concluding that many of the limited partnerships' transactions were fraudulent. The IRS eventually made a global settlement offer, which many investors accepted January 15, 1988. However, some of the investors did not settle their disputes with the IRS until December 1989.

On February 8, 1989, Edelman and others were indicted on various charges of tax fraud. Exactly four years after the indictments, on February 8, 1993, Plaintiffs–Appellants filed suit against Edelman and his co-conspirators. On August 8, 1995, the district court refused to grant summary judgment on the issue whether Plaintiffs–Appellants' RICO claims were untimely as a matter of law. The court held that Plaintiffs–Appellants had notice of their injuries January 15, 1988, when the IRS reached a settlement with some of those who had invested in the limited partnerships. However, the court concluded that genuine issues of material fact re-

mained whether Plaintiffs–Appellants discovered the fraudulent conduct prior to February 8, 1989. *See 131 Main Street Assocs. v. Manko*, 897 F.Supp. 1507, 1516 (S.D.N.Y.1995).

On February 23, 2000, the Supreme Court decided *Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000), which rejected the notion that a claimant must discover a pattern of fraudulent conduct, in addition to an injury, to trigger the statute of limitations on RICO claims. Edelman and another defendant again moved to dismiss the case pursuant to the statute of limitations. Plaintiffs–Appellants moved to amend their complaint to add detailed allegations of fraudulent concealment in support of their claim for equitable tolling. Treating the defendants' motion to dismiss as one for summary judgment, the district court held that the limitations period had expired, as Plaintiffs–Appellants filed their suit February 8, 1993 but were aware of their injuries prior to the indictments on February 8, 1989. However, the court denied the motion and ordered additional discovery on the issue whether the doctrine of equitable tolling would preclude summary judgment.

On January 14, 2002, after discovery concluded, the district court granted summary judgment on the basis that Plaintiffs–Appellants could not establish fraudulent concealment, which would toll the statute of limitations. Although the court concluded that Edelman and his co-conspirators took affirmative steps to conceal the fraud, it held that Plaintiffs–Appellants had notice of their potential claims prior to the commencement of the statute of limitations period, rendering equitable tolling inappropriate. The district court also concluded that equitable tolling was not avail-

---

**1.** Jon Edelman is the only defendant partici-    pating in this appeal.

able because Plaintiffs–Appellants did not exercise due diligence in pursuing their claims. Plaintiffs–Appellants now appeal the district court's grant of summary judgment, arguing that the district court erred by holding as a matter of law that: 1) the investors' RICO claims were untimely because they had notice of their injuries by virtue of the 1988 settlement; and 2) equitable tolling of the statute of limitations was barred, because the investors knew about the fraud and failed to exercise due diligence.

Plaintiffs–Appellants argue that the district court erred in holding that Plaintiffs–Appellants should have discovered their tax injuries prior to February 8, 1989 by virtue of the IRS disallowance notices and the IRS global settlement offer in December 1987, which many investors accepted January 15, 1988.[2] As discussed, the statute of limitations on RICO claims commences when plaintiffs discovered or should have discovered their injuries. *Rotella*, 528 U.S. at 553–54, 120 S.Ct. 1075; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir.1988).

▐ Regardless of whether investors should have discovered their injuries pursuant to the IRS disallowance notices, it cannot be disputed that anyone who resolved their claims with the IRS pursuant to the settlement offer knew when they accepted the offer January 15, 1988 that they would incur an injury. Acknowledging that the settlement provided the framework for resolving claims, Plaintiffs–Appellants nevertheless argue that those who accepted the offer could not have determined with certainty their tax liability, because it was unclear whether the IRS would allow them to net the interest due

on the refunds owed to them against the interest on their deficiencies. However, Plaintiffs–Appellants do not dispute that they represented to the district court that "plaintiffs who accepted the [settlement] offer could be said to be in a position to calculate the extent of the injury they would sustain once the settlement was implemented." Regardless, the district court correctly noted that an injury need only be non-speculative in nature to trigger the statute of limitations. *See Bankers Trust*, 859 F.2d at 1106 (holding that creditors' injuries from fraudulent transfer were speculative because it was unclear whether bankruptcy trustee could recover some or all of the assets in question). In the instant case, the investors knew that they had suffered tax liabilities, and they had an agreed-upon formula for calculating their tax arrears. The remaining issues to be resolved were not significant enough to render Plaintiffs–Appellants' injuries speculative.

In the alternative, Plaintiffs–Appellants argue that investors who did not accept the settlement offer had no notice of their injuries until their final settlements were negotiated. However, a plaintiff suffers an injury when he becomes obligated to pay that expense, and not at some later date when he actually made the payment. *Id.* at 1105. Plaintiffs–Appellants should have discovered their injuries when the IRS made a final determination whether it would disallow the income and expense items in question. *See Landy v. Mitchell Petroleum Tech. Corp.*, 734 F.Supp. 608, 625 (S.D.N.Y.1990). This occurred in December 1997, when the IRS, after receiving Plaintiffs–Appellants' protest letter, determined that it would disallow certain

---

2. Plaintiffs–Appellants do not appeal the district court's conclusion that they had notice of their other injuries prior to February 8, 1989, *viz.*, the expenses they incurred defending

against challenges to their tax filings and the depletion of the financial base of the tax-shelter investments themselves.

items and explained the method for resolving Plaintiffs–Appellants' liabilities. While Plaintiffs–Appellants correctly note that an offer does not give rise to an injury, the settlement is significant because it evidences that the IRS had made a final determination with respect to the income and expense items in question. Indeed, Plaintiffs–Appellants concede that the "IRS asserted that a taxpayer's failure to accept the 1988 Settlement Offer by its January 15, 1988 deadline would result in the IRS requiring the taxpayer's concession of all liability plus additions to tax and damages." Moreover, Appellants do not demonstrate a "real possibility" that they could have eliminated or significantly reduced these liabilities. *See In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir.1998). Accordingly, Plaintiffs–Appellants should have discovered their injuries prior to February 9, 1989, regardless of when they executed closing agreements with the IRS.[3]

Plaintiffs–Appellants also argue that the district court erred in holding as a matter of law that they could not demonstrate fraudulent concealment. A statute of limitations for RICO claims may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: 1) the defendants wrongfully concealed material facts relating to their wrongdoing; 2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and 3) the plaintiff exercised due diligence in pursuing discovery of the claim during the period plaintiff seeks to have tolled. *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36 (2d Cir.2002) (citations omitted).

█ Plaintiffs–Appellants cannot establish fraudulent concealment as a matter of

law, because nothing should have prevented them from discovering the nature of their claims prior to February 8, 1989. The IRS began issuing disallowance reports in 1985, which should have alerted Plaintiffs–Appellants to the existence of fraud. Plaintiffs–Appellants concede that these reports concluded that "the partnerships had failed to show their transactions were genuine." For example, the IRS report of March 21, 1985 concluded that The Arbitrage Group limited partnership's trades with Government Arbitrage Co. between 1979 and 1982 were suspect. "[T]here is no evidence that the partnership ... or the clearing companies ... ever owned these securities." The IRS also concluded that "the millions of dollars in interest that TAG purports to have paid or received was never actually paid."

Similarly, the IRS report of July 23, 1985 found no evidence that the Midopco limited partnership's transactions in 1983 were genuine. The IRS report of January 17, 1986 found no evidence that "[t]he purported transactions [in 1982] were actually transacted, or that they were at arm's length." The IRS report of April 3, 1987 concluded with respect to the Sectra limited partnership that "the taxpayer's transactions [in 1982] were shams, lacked sufficient substance and were not primarily profit-motivated...." The IRS again concluded in April 1988 that certain transactions of the Midopco and Conarbco limited partnerships in 1984 could not be reconciled because there was no evidence that "[t]he purported transactions were actually transacted or that they were at arms length."

This evidence of fraud, which is the gravamen of the instant suit, should have

---

**3.** *Mazella v. Rothschild Reserve Int'l,* No. 89 Civ. 4675(MJL), 1992 WL 138321, at *1 *3 (S.D.N.Y. June 3, 1992) does not benefit Plaintiffs–Appellants' position. In that case, there is no indication that the IRS made a final determination whether to disallow the tax deductions at issue prior to the actual settlement.

informed Plaintiffs–Appellants of the existence of their claims. *See, e.g., Zola v. Gordon,* 685 F.Supp. 354, 367 (S.D.N.Y. 1988) (holding that equitable tolling was inappropriate in civil RICO case where plaintiffs were notified by the IRS that a material asset's value had been grossly misrepresented). Although Plaintiffs–Appellants maintain that they reasonably believed the trades were legitimate because they suspected the IRS had overlooked that the trading involved unrelated parties, the IRS reports clearly indicated that the partnerships had given "no credible explanation for their dealings in these securities," indicating that their belief was unreasonable. Plaintiffs–Appellants concede that their representative, Barry Lyman, suspected fraud as early as 1985, but argue that they had no notice of their claims, because Lyman was unable to discover the fraud after exercising due diligence. Even were the Court to accept this argument, Plaintiffs–Appellants were again notified of the fraud in April 1988, after Lyman resigned as their watchdog in February of that year. Plaintiffs–Appellants argue that they were not alerted by these 1988 notices, because they were virtually identical in content to earlier reports. However, the IRS notices in 1988 were not mere repeats of the prior notices, as they covered different periods of time. The mere fact that the IRS drew the same conclusions in 1988 should have alerted Plaintiffs–Appellants that Lyman had failed to detect an ongoing fraud. Moreover, the district court correctly noted that the IRS again disallowed certain items with respect to Midopco and Conarbco transactions approximately 9 months after receiving the investors' protest letter concerning disallowances in identical transactions, indicating that the IRS had rejected their arguments.

In sum, Plaintiffs–Appellants knew or should have known of their claims no later than 1988, regardless of whether Defendants–Appellants took affirmative steps to conceal their fraudulent conduct. As Plaintiffs–Appellants cannot demonstrate that they could not have discovered the existence of fraud, the Court need not reach the issue whether they exercised due diligence between February 18, 1988, when Lyman resigned as their "watchdog," and February 8, 1989, when Edelman and his co-conspirators were indicted.

Based upon the foregoing, the judgment of the United States District Court for the Southern District of New York is **AFFIRMED.**